(Court of Common Pleas of Lucas County, Ohio.)

THE STATE OF OHIO on the Relation of THE BRYCE FURNACE COMPANY, a Corporation organized and existing under the Laws of the State of Ohio,

v. THE BOARD OF EDUCATION of the City of Toledo, Lucas County, Ohio, and THE SMEAD FURNACE AND FOUNDRY COMPANY.

---

*Defective bid for school-house furnishing.—*
1. Alternative writ of mandamus issues when the petition filed upon its face shows a proper case, but upon sustaining a demurrer to the petition, the alternative writ will be refused.
2. A bid made under sec. 3988 Rev. Statutes, separately stating the labor and material in the bill with the price of each, but containing the following provision "The above proposal includes labor and material, and is given with the understanding that it is to be accepted only as a whole" is not in compliance with the statute.
3. The Board of Education could not, under this bid, exercise the discretion provided for in paragraphs 6 and 7 of the statute.
4. This defect in the bid was a material one, which the Board had no right to waive.

(Decided June 4th, 1896.)

---

Pratt, J:—(Orally.)

Upon the question of this demurrer in this case for a mandamus, I find that upon the examination which I was enabled to make last night, that it is a closer question than I had anticipated. If this were a court whose decisions were required to be followed by anybody, I should think the court ought to make a formal decision; but the only thing here now is to get at what the court thinks about it and the action that the court should take. I indicated last night that the objections I had seen to the petition had been so far removed by the amendments that had been made

in the matter of the amended petition, and by the discussions that have been had, that the result would probably be overruling of this demurrer; but I have since given the amended petition all the examination possible, and find that it may be summarized as follows: 1. That plans were adopted by the Board on March 9, for this building, and that it was not to cost over $40,000. 2. That proposals for bids under these plans were advertised for four weeks, bids to be filed by April 10th, at twelve o'clock. 3. The bid of the relator was filed in time, to do the work for $2460. And then it sets up a waiver as to these bids—of which there are really two—attached to and made a part of the petition. It alleges a waiver of a defect which is apparent in the bid, as to the want of a guaranty; without going into detail, it alleges a waiver, and also a waiver by implication. 4. That the bids were opened at the next meeting of the Board after being filed. 5. That the consideration of the bids was deferred from time to time—without giving details—before any of them were let for any part of the work. 6. That coming down to April 20, bids for all of the work other than the heating and ventilating—including the plastering, carpenter work, etc. were accepted, aggregating $35,886.00. 7. That thereafter, upon reference to a committee, a majority and a minority report was made, the majority report being in favor of awarding the bid in favor of the relator, and the minority report in favor of awarding it to the Smead Heating & Ventilating Co., and it is stated that the amount of this contract proposed by this report to be awarded to the latter company, which it says was adopted by a majority of the Board, was the sum of $3600.00; the relator's bid being $2460.00, making a difference of $1140.00 in the two bids.

As a general statement of the petition, this is perhaps sufficient to enable us to come to the legal question involved.

As to some of these legal questions, my own mind is perfectly clear, and in the commencement of this discussion, I may say, it had been pretty well settled upon some of the points claimed here, and, upon reflection, I think certain statements may be made as to them.

First, as to these legal questions, I think that this Chapter headed "Chapter VIII, School Houses and Libraries," (Rev. St. sec. 3987-4006) is a special part of the statutes, applying directly to the action of school boards in reference to school houses, and that its special provisions are to be looked at first and without special reference to the dates of the passage of the acts—I have looked at that somewhat, but I do not think it is the all-important question here; but it seems to me that the court is required to take this chapter and the special provisions contained therein as being controlling, except in so far as they may be supplemented by other provisions. Sec. 794, etc. which may apply, and do apply, in a proper case, to school boards.

So far as the question here is concerned, taking this section 3988 in connection with 3987 (and those are the substantial sections involved in this discussion, as I think) it seems to me that this statute is more definite, more restricted, than the sections of the statute governing the erection of court houses by boards of county commissioners, Sec. 794 etc., and, in so far as it is more definite and more restrictive, there is only one thing for the court to do in passing upon it, without reference to where it may hit, and that is to take up this statute and see what is required; what restrictions are placed upon the school board in this matter and in this case, under the statements of this petition.

This is a demurrer to a petition. An alternative write of mandamus issues when the petition upon its face shows a proper case. That is the holding of the Circuit Court in a case with which I had some connection;

and therefore, if a petition is demurrable upon its face—subject to a general demurrer—I suppose that even an alternative writ could not issue.

It will be noticed by anybody who looks at all into any decisions in reference to the provisions governing boards of any kind, that they are strictly construed—in some cases quite strictly construed. Not only is this true in mandamus cases, but it is true in cases which are not direct mandamus cases.

There is a case in 38 Ohio St., 383 to 388, Board of Education v. Mills, in which an action was brought by a person· who was a bidder against the board of education for damages for failing to carry out a contract. Not to go into the case in detail I will say that the board of education had referred the question as to whether a man had a valid contract or not, and whether he was entitled to damages, to a local board or committee, to enable the board to determine whether his bid should be accepted or not, and it had been acted upon by this local board or committee under this reference, but not by the whole board itself, and the Supreme Court held that evidence of the acceptance of the bid was improperly admitted by the court below; that the matter of determining whether the bid should be accepted or not, was in the school board, and could not be delegated by them to any committee. But it is not specially important in this case, except as it shows a little the principle of construction.

Now, this Sec. 3988 requires, that not only the building etc. provided for in Sec. 794 should be let by advertisement, but it puts in an important word, as it seems to me, that of "furnishing:" "When a board of education determines to build, enlarge, repair or 'furnish' a school house or school houses," etc. Now, this provision as to furnishing, of course, is a large provision, and, as was remarked in argument here, it would properly include desks and furniture—and I do not see why it does not necessarily include fixtures upon the building; it is a very comprehensive word, and of course the legislature has the power to determine, and not the courts—the courts have nothing to do with the policy of it. I am, therefore, so far as my own mind is concerned, satisfied that the Wood county case, Pargillis case, 10 O. C. C. 376, the authority upon which I decided the case of Plessner v. The Commissioners,—is not a decisive case upon these questions; in fact it is not in point in this case, and I hold therefore, so far as this case is concerned, that, in my judgment, the statute, 3988, requires that bids should be received in this case under the provisions and requirements of these sections, and that the relator in this case, in order to show that he has any right whatever in this case, must bring himself within these several provisions and conditions and show that he has complied with them; because, it may be said, without any sort of discussion, it being the accepted law, that the relator must stand upon his own rights, and not upon the weakness of another; he must make a clear legal case and show himself to have clear legal right.

Now, laying this petition alongside of this statute, for the purpose of making a comparison of them, it will be found that there is a requirement of this statute which may be brought in question, and has been brought in question in the arguments before the court, and is to be considered. I refer to clause 4; which recites, among other things, that the bid shall be accompanied by a sufficient guaranty of some disinterested person, that if the bid be accepted, a contract will be entered into and the performance of it secured.

So far as clause 4 is concerned, the petition in this case makes two allegations—or allegations of two different characters: First, that

there was an express waiver of this condition, by the board. I may perhaps, as well read a line or two: "But said board of education did not require bidders upon said work to accompany their bids thereon by sufficient guaranty of a disinterested person, that if the bids were accepted a contract would be entered into."

Second: It is claimed that they did consider the bids, without making objections.

Now, that raises the question as to whether this is a matter that can be waived under clause 3 of the syllabus in the case of State ex rel. Ross v. Board of Education, 42 Ohio St., 374, which reads as follows:

3. "The board may waive defects in the form of a bid, where such waiver"(and here is the important part of it) "works no prejudice to the rights of the public for whom the board acts."

Now, so far as this is concerned, looking at it in the light of this decision, it seems to me, that as relates to the guaranty, it is one that the board might waive and for the reason, perhaps, that the making of the guaranty is a matter following the acceptance of the bid, and by the mere acceptance of the bid the board of education would not bind itself to enter into a contract if the guaranty were not furnished. There are some decisions in this matter that would throw perhaps some light upon the question as to whether this might be waived or not. Take the Licking county case, 26 Ohio St. 531; wherevery much the same question was raised. It was held that it was not fatal to the relator that he had not tendered his bond with his bid, where a bond was required in the advertisement, perhaps, because that was something that followed the acceptance of the bid. And the case in 21 Ohio St. 320, known as the Darke county case, also mght be looked at in that connection.

The question under clause 5 of this statute: "When both labor and materials are embraced in the work bid for, each must be separately stated in the bid with the price thereof," is, in my mind not so easy of solution.

I may say, in passing, that so far as the advertising in this case, although I was in a good deal of doubt, when that was first presented, whether that was sufficient, I think it is sufficient, under this statute because this statute does not give, specifically (and I hardly can say that it does generally) the requirements of this notice. It simply says "The board shall advertise for bids for the period of four weeks;" but it does not say what shall be in the notice—does not specify distinctly and definitely what the notice shall contain. I think that the notice is sufficient. So far as the question we are considering, in reference to this clause 5, I do not know of but one case, and that is the Ross case in 42 Ohio St. 374, that throws very much light upon the subject, except the general provisions which I have already referred to, running through all the statutes, that these must be strictly construed. The general principles that we all understand, that while the legislature has all the legislative power, wherever it delegates any power to any municipality or any inferior board, or authoritty, that must be strictly construed, and only such power as is directly or by necessary implications given is covered by the delegation, the residue is in the legislature, and it must be strictly construed so far as its limitations are concerned. These principles are adverted to and laid down in reference to cases having other particular circumstances—not like the one here, but, for the purpose of getting light upon the subject that they would give, I have looked at the Blind Asylum case, in 19 Ohio St. 108 and following, in which the court discusses the question as to what matters appear in the face of the bid; a Darke county case, in 21 Ohio St., 311; this Clock Company case, 31 Ohio St. 419; but they are not directly in point in this case, and are only to be looked at for the purpose of getting a view of the principles of construction.

Now, in order to construe these bids, we have, of course, to look at the bids themselves. This bid of the Bryce Furnace Co. provides for the furnishing and placing in position of certain furnaces for the purpose of warming and ventilating the rooms of said building "To be heated as shown in the plans of Mr. E. O. Fallis, architect." It contains a cut of the furnace which it is proposed to give, and the manner in which it is set, and has this provision in it: "The above proposal includes labor and material, and is given with the understanding that it is to be accepted only as a whole." Now this bid includes labor and material, there is no doubt about that, for furnishing the Bryce furnace and placing it in position; the one is material and the other is labor, and the bid is, "for labor, $800; for material, $1210."

So far as the other part for the work is concerned, "Proposal for Flushing Closets," the other bid divides them, and divides them in the same way that this one does: "Bid for labor, $100; bid for material, $350." There is in this bid for the ventilating the same provision, written at the bottom of the page, that is in the other, inserted in the bid but placed below the signature, but this makes no difference I suppose; while, above the signature in the first one, is this: "The above bid covers labor and material, and is given with the understanding that it be accepted only as a whole." It should be said in justice to the attorney for relator that he knew nothing of the existence of this provision in either bid when he began this action, and it was therefore not contained in the copies of the bids of relator attached to the original petition, but it has since been inserted in the amended petition.

Now clause 6 of the statute says: "None but the lowest responsible bidder shall be accepted, but the board may in its discretion reject all the bids, or accept any bid for both labor and material which is lowest in the aggregate for such improvement." And, in clause 7, it says: Any part of a bid which is lower than the same part of any other bid shall be accepted, whether the residue of the bid is higher or not; and if it is higher, such residue shall be rejected." What is meant by the word "part," is not so clear as it might be, perhaps; but, following this clause 5, I suppose that the fair intention, and I do not see how anything else can be meant, but that the parts referred to are the "Labor" and the "Material," which are required to be bid for separately.

Now, there are in these two clauses certain matters which are of discretion, and certain matters not of discretion. The discretion is given them to let to the lowest responsible bidder—such are the words of the statute—and therein is a certain discretion. They are not bound to let it to a tramp who comes along and puts in a bid and whom they have no reason to suppose would be able to complete it. In this case, in 39 Ohio St. 188, State v. Commissioners which has been referred to in argument, it appears that the Supreme Court, when a charge was made that a certain bidder was incompetent as being an intemperate man, went into the question and heard witnesses as to the character of the man—whether he was a proper person to whom it should have been let—and this is, indeed, what is meant by the term "responsible bidder," and is a case for the exercise of sound discretion.

There is, then, given in this clause 6, two matters of discretion—: "The board may, in its discretion, reject all the bids"—That is the first. In case of their rejecting of the bids, of course they would be thrown right back as though no bids were made; and, under my construction of the statute, would be required to advertise over again.

Second. And as another part of this discretion—"accept and, bid for

both labor and material, which is the lowest in the aggregate for such improvement or repairs." Here is a discretion, unquestionably.

The next, clause 7, contains certain mandatory provisions: "Any part of a bid which is lower than the same part of any other bid shall be accepted, whether the residue of the bid is higher or not; and, if it is higher, such a residue shall be rejected." Here are two mandatory provisions, in this; and these mandatory provisions, of course, must be viewed in the light of the other parts of the statute; because it is a well known rule of construction that every part of the statute must be allowed to stand and be given force and effect, in so far as they are not plainly and clearly in conflict and impossible to be reconciled; and, so far as these mandatory provisions of the 7th clause are concerned, it is evident that there is still a discretion left; and, in order to exercise that discretion, and in order to enable the board to have power to exercise this discretion, and to act either underc lauses 6 or 7, it seems to me to be imperatively necessary that the labor and materials should be separately stated—otherwise they cannot tell whether they should accept a man's furnace and let the setting to another party, or let it all to the one party. Now, after the correction of this petition and the putting in of this clause, the matter would stand in this way: Here are two bids, in which they have separately stated the different items of cost of labor and materials, but they have precluded, (by the following clause—requiring that it should be accepted as a whole if at all) — the board from exercising the discretion that is given to them by clause 6, or the mandatory provision of the 7th clause, and they could not, under this bid, carry out the provisions of these two clauses—6 and 7—as they are stated in the statute.

Now, the question remains: Is that a defect that comes within this third syllabus in the case of Ross v. Com'rs, 42 Ohio St. 374? In that case, there are two bids which are considered: The first one being the Newell bid, did not separate in any way the clauses for labor and materials; it did not comply with the provisions of clause 4, by giving a guarantor. The Ross bid separated each item: "Excavating, $600.00"— that is for labor—"Stone work, Rubble, $1015.95",—and so on, separating the labor and material for each one, but it did not comply with the provisions of the statute in reference to the furnishing of sureties, and the court in that case—McIlvaine, J.,goes on to discuss the matter fully, and decides that so far as the bid of the relator is concerned, it is substantially defective, and that he could not be awarded the contract notwithstanding the question as to the defect in the Newell bid. The court does not decide as to the Newell bid; they leave that entirety open and say they are not called upon to say whether that could or could not be waived. In the last clause of their opinion, they say: "We think the board did not err in refusing the relator any part of his bid." And they then say: "The validity of the contract entered into between the board of education and Newell, is not a question involved in this case."

Now, the only effort made in the petition to get over this matter, is the action of the board in taking, receiving and discussing the bids. But it seems to me that this is no answer to the position here, that, even if they took it and discussed it, they are precluded by the terms of the bid from carrying cut the provisions of clauses 6 and 7 of the statute. It does not seem to me that any amendment of the petition will help that; and do not see how it could, even if a direct waiver were alleged. It seems to me to be a material matter, something that precluded the action of the board, which was intended to be covered by the statute; and while I thought last night this demurrer should be overruled, I have changed

my mind, and my judgment now is—without going further into it—I think this petition as it now stands, shows no right in the relator to have an alternative writ issued here, and that the demurrer should be, and it is sustained.

I. N. Huntsberger, Attorney for plaintiff.

Chas. F. Watts, City Solicitor, C. W. Everett, E. W. Tolerton and H. A. Merrill, Attorneys for defendant.